```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

BRIAN MATTHEWS                              CIVIL ACTION

VERSUS                                      NO: 15-1658

WEEKS MARINE, INC.                          SECTION: "J" (2)
```

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This litigation derives from an injury suffered by Plaintiff, Brian Matthews, while working for Defendant, Weeks Marine, Inc., aboard the dredge RN WEEKS. On May 15, 2015, Plaintiff filed suit, alleging that he was entitled to maintenance and cure, as well as damages for Defendant's negligence and the unseaworthiness of the RN WEEKS. On May 23, 2016, the Court held a bench trial on the issues. At the conclusion of the trial, the Court took the matter under advisement. Upon consideration of all of the evidence and the arguments of Counsel, the Court issues the following findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a).

## FINDINGS OF FACT

1.

Plaintiff is a resident of the state of Mississippi.

2.

Defendant hired Plaintiff on February 4, 2015 and assigned him the position of cook on the RN WEEKS.

1

3.

Plaintiff was at all time pertinent a seaman and member of the crew of the RN WEEKS.

4.

At all times material hereto, Weeks owned and operated the RN WEEKS.

5.

On or about March 20 or 21, 2015, Plaintiff injured his right knee while working on the RN WEEKS. At approximately 4:30 a.m., Plaintiff left the galley, where he worked, and walked out to the stern deck to smoke a cigarette. As he walked toward the stern, Plaintiff described seeing water on the deck, and slipped on what he described as a "slick spot" and twisted his right knee. Although he testified at trial that he observed an oily substance on his shoes once he walked back into the galley, this testimony contradicts what Plaintiff reported to the Captain and what he wrote on the accident report.

6.

The deck where Plaintiff slipped had been painted with non-skid paint several years before the incident. At the time of the accident, the deck had rusted, creating scale and blisters. There is no evidence that this caused the deck to be unreasonably slippery at the time of this accident.

7.

Initially, Plaintiff did not report his injury. Plaintiff eventually reported the incident on April 6, 2015.

8.

On April 12, 2015, Plaintiff went to the emergency department at Marion General Hospital near his home in Mississippi, where he complained of pain in his right knee.

9.

Plaintiff underwent an x-ray of his knee, which showed joint effusion and changes in the medial and patellofemoral compartment.

10.

Plaintiff advised Marion General of a prior knee injury twelve years earlier in 2003, which he also reported to Weeks in his pre-employment physical examination.

11.

Plaintiff had not experienced pain in his knee or received any medical treatment for his right knee between 2004 and when he injured his right knee again on the RN WEEKS.

12.

An MRI performed on Plaintiff's right knee on April 22, 2015 showed a tear of the anterior horn of the lateral meniscus, as well as loss of articular cartilage involving the lateral compartment of the knee and patella.

13.

Plaintiff sought medical treatment from Dr. Thomas Lyons, an orthopedic surgeon located in Kenner, Louisiana.

14.

Dr. Lyons initially recommended conservative treatment consisting of anti-inflammatory medications, a steroid injection, and a trial of viscosupplement injections.

15.

After the round of five separate injections was completed, Plaintiff reported no improvement with his knee pain complaints, and Dr. Lyons recommended a total knee replacement for Plaintiff's right knee.

16.

Dr. Lyons recommended a knee replacement rather than an arthroscopic procedure because Plaintiff's pain symptoms were less mechanical in nature, and more consistent with an arthritic-type constant dull pain.

17.

Dr. Lyons attributed his treatment and the recommendation for a total knee replacement to the accident that Plaintiff sustained aboard the R.N. WEEKS.

18.

Plaintiff has incurred $4,650 in medical expenses, and the proposed total knee replacement will cost approximately $45,885, excluding any costs for post-surgical care.

## CONCLUSIONS OF LAW

### A. Negligence

1.

The Jones Act provides a seaman a cause of action for injuries sustained as a result of an employer's negligence. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (*en banc*).

2.

A seaman is entitled to recover under the Jones Act if his employer's negligence is the cause, in whole or in part, of his injury. *Id.*

3.

In order to establish causation for a Jones Act claim, the plaintiff bears a "featherweight" burden of proof. *Gavagan v. United States,* 955 F.2d 1016, 1019 (5th Cir. 1992). The plaintiff need only establish that the actions of the defendant contributed to the injury even in the slightest degree. *Id.*

4.

"Under the Jones Act, a defendant must bear the responsibility for any negligence, however slight, that played a part in producing the plaintiff's injury." *In re Cooper/T. Smith*, 929 F.2d 1073,

1076-77 (5th Cir. 1991) (citing *Landry v. Oceanic Contractors, Inc.,* 731 F.2d 299, 302 (5th Cir.1984)).

5.

The Court finds as a matter of law that Defendant exercised ordinary prudence and took reasonable care in providing Plaintiff with a safe place to work. Plaintiff failed to carry his burden of proof to establish the nature of the substance on which he slipped, or that there was any foreign substance on the deck other than water, which is a normal expected condition in a seagoing vessel. Further, Plaintiff failed to establish whether the accident was caused by any act or omission of a person or party for whom Defendant is responsible.

**B. Unseaworthiness**

6.

Unseaworthiness is a condition of a vessel that presents an unreasonable risk of harm to the seaman. *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007).

7.

The plaintiff bears the burden of proving unseaworthiness at trial. *See Phillips v. Western Co. of North America,* 953 F.2d 923, 928 (5th Cir. 1992).

8.

The vessel owner is not "obligated to furnish an accident-free ship." *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550 (1960).

9.

The elements of an unseaworthiness claim are (1) that the defendant provided a vessel or equipment that was not reasonably fit for its intended purpose and (2) that "the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Id.*

10.

There is no requirement that a plaintiff show negligence, but the "substantial" causation requirement is more stringent than the causation in a Jones Act negligence claim. *Id.*

11.

The Court finds as a matter of law that Defendant provided a seaworthy vessel and thus is not liable to Plaintiff. Plaintiff failed to introduce sufficient evidence to show any unseaworthy conditions aboard the RN WEEKS that played a substantial part in bringing about, or actually causing, his right knee injury.

### C. Maintenance and Cure

12.

"Maintenance and cure is an obligation imposed upon a shipowner to provide for a seaman who becomes ill or injured during his service to the ship." *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002).

13.

To receive maintenance and cure, a plaintiff must prove (1) his employment as a seaman; (2) that his illness or injury "occurred, was aggravated or manifested itself while in the ship's service," (3) the wages to which he may be entitled; and (4) "the expenditures or liability incurred by him for medicines, nursing care, board and lodging." *Smith v. Fla. Marine Transporters, Inc.*, No. 10-889, 2011 WL 2580625, at *2 (E.D. La. June 29, 2011) (Lemmon, J.).

14.

"[A]mbiguities or doubts in the application of the law of maintenance and cure are resolved in favor of the seaman." *Gaspard v. Taylor Diving & Salvage Co.,* 649 F.2d 372, 374 n. 2 (5th Cir. 1981).

15.

"Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman . . . until the point of 'maximum cure.'" *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979).

16.

A seaman reaches maximum cure when "it appears probable that further treatment will result in no betterment of the seaman's condition." *Id*. When "it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and

8

suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved." *Id.* Thus, "when a particular medical procedure is merely palliative in nature or serves only to relieve pain and suffering, no duty to provide payments for cure exists." *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 476 (5th Cir. 2015).

17.

When the evidence shows that "further rehabilitation would be more than simply palliative, and would improve [the plaintiff's] medical condition," the court may award maintenance and cure "in aid of permanent improvement short of a complete cure." *In re RJF Int'l Corp. for Exoneration from or Limitation of Liab.*, 354 F.3d 104, 107 (1st Cir. 2004) (internal citations omitted).

18.

A seaman may recover punitive damages from his employer for willful and wanton failure to pay maintenance and cure. *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 424 (2009).

19.

A second opinion contrary to the treating doctor's opinions regarding diagnosis or prognosis of an injured seaman does not provide the unequivocal evidence required for termination of maintenance and cure benefits. *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985); *Gorum v. Ensco Offshore, Co.*, 2002 U.S. Dist. LEXIS 21992 (E.D. La. November 14, 2002). Indeed,

absent an unequivocal justification to terminate a seaman's maintenance and cure, a ship owner may subject itself to liability for punitive damages and attorney's fees if it terminates benefits nonetheless. *Rowan v. Chem Carrier Towing, LLC*, No. 12-712, 2015 WL 2097572 (E.D. La May 5, 2015). "When there are conflicting diagnoses and prognoses from various physicians, there is a question of fact to be determined by the trier of fact as to a plaintiff's entitlement to maintenance and cure benefits and as to whether an employer's termination of maintenance and cure benefits was arbitrary or capricious." *Bland v. Omega Protein Inc.*, No. CV 14-0127, 2016 WL 280403, at *4 (W.D. La. Jan. 21, 2016) (citing *Tullos*, 750 F.2d at 388).

20.

The Court finds as a matter of law that Plaintiff has not reached maximum medical improvement and is entitled to maintenance and cure from Weeks Marine.

21.

Plaintiff was a seaman, and his pre-existing condition was aggravated while in the ship's service.

22.

Although the condition seen in Plaintiff's knee is degenerative in nature, it only became symptomatic as a result of his slip on the RN WEEKS.

23.

Dr. Lyons' proposed total knee replacement will improve Plaintiff's physical condition and the functioning of his knee, not merely relieve or alleviate his pain.

24.

Plaintiff is entitled to recover all medical expenses relating to the treatment and surgery on his right knee.

25.

Plaintiff is also entitled to maintenance benefits at the rate of $20 per day from April 8, 2015 through the current date, and at the rate of $35 per day from the date of this order until he has reached maximum medical improvement.

26.

There is no evidence that Weeks' failure to pay maintenance and cure was willful or wanton, and thus Plaintiff is not entitled to punitive damages.

**CONCLUSION**

Accordingly, and based on all the foregoing Findings of Fact and Conclusions of Law,

Judgment will hereafter be entered in favor of Defendant and against Plaintiff as to Plaintiff's negligence and unseaworthiness claims. Judgment will be entered in favor of Plaintiff and against Defendant as to Plaintiff's maintenance and cure claim.

New Orleans, Louisiana, this 25th day of May, 2016.

 _____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE